IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:20-CV-124-RJ

| | |
|---|---|
| MONIE JAY GARDNER, <br><br> Plaintiff/Claimant, <br><br> v. <br><br> KILOLO KIJAKAZI, <br> Acting Commissioner of Social Security, <br><br> Defendant. | ORDER |

This matter is before the court on the parties' cross-motions for judgment on the pleadings [DE-19, -21] pursuant to Fed. R. Civ. P. 12(c). Claimant Monie Jay Gardner ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the denial of his application for Supplemental Security Income ("SSI") payments. The time for filing responsive briefs has expired, and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, Claimant's Motion for Judgment on the Pleadings is denied, Defendant's Motion for Judgment on the Pleadings is allowed, and the final decision of the Commissioner is upheld.

## I. STATEMENT OF THE CASE

Claimant protectively filed an application for SSI on January 12, 2017, alleging disability beginning November 27, 2015. (R. 15, 165–71). His claim was denied initially and upon reconsideration. (R. 15, 61–85). A hearing before the Administrative Law Judge ("ALJ") was held on April 11, 2019, at which Claimant, represented by counsel, and a vocational expert ("VE") appeared and testified. (R. 15, 29–60). On May 10, 2019, the ALJ issued a decision denying

Claimant's request for benefits. (R. 12–28). On April 29, 2020, the Appeals Council denied Claimant's request for review. (R. 1–6). Claimant then filed a complaint in this court seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

2

## III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 416.920 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 416.920a(b)–(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Id.* § 416.920a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* § 416.920a(e)(3).

In this case, Claimant alleges the ALJ erred in (1) finding that Claimant could perform a reduced range of sedentary work when the medical opinions limited Claimant to light work and (2) discussing Claimant's subjective complaints. Pl.'s Mem. [DE-20] at 14–19.

## IV. ALJ'S FINDINGS

Applying the above-described sequential evaluation process, the ALJ found Claimant "not

3

disabled" as defined in the Act. At step one, the ALJ found Claimant had not engaged in substantial gainful activity since January 12, 2017, the application date. (R. 17). Next, the ALJ determined Claimant had the following severe impairments: congestive heart failure, obesity, diabetes mellitus, obstructive sleep apnea, asthma, restrictive lung disease, spine disorder, left knee disorder, and carpal tunnel syndrome. *Id.* The ALJ also found Claimant had nonsevere impairments of hypertension, enlarged heart, hyperlipidemia, inflammatory bowel disease, GERD, kidney stones, urinary tract infection, chronic kidney disease, left ulnar neuropathy, hip bursitis, cellulitis, abscess, sepsis, lymphedema, small bowel obstruction, breast mass, rash, chronic wound, CAS, hemorrhoids, and edema and non-medically determinable impairments of speech disorder and learning disorder. (R. 17–18). However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 18–19).

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform sedentary work[1] requiring the following limitations:

> (1) no climbing of ropes, scaffolds or ladders; (2) occasional climbing of ramps or stairs; (3) occasional stooping, crouching, balancing, kneeling or crawling; (4) no concentrated exposure to dangerous hazards such as unprotected heights or dangerous machinery; (5) no concentrated exposure to extreme heat or dusts, odors, fumes or other pulmonary irritants; and (6) frequent handling and fingering.

(R. 19–22). In making this assessment, the ALJ found Claimant's statements about his limitations not entirely consistent with the medical and other evidence. (R. 20).

---

[1] Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 416.967(a); S.S.R. 96-9p, 1996 WL 374185, at *3 (July 2, 1996). "Occasionally" generally totals no more than about 2 hours of an 8-hour workday. "Sitting" generally totals about 6 hours of an 8-hour workday. S.S.R. 96-9p, 1996 WL 374185, at *3. A full range of sedentary work includes all or substantially all of the approximately 200 unskilled sedentary occupations administratively noticed in 20 C.F.R. Part 404, Subpart P, Appendix 2, Table 1. *Id.*

4

At step four, the ALJ concluded Claimant did not have the RFC to perform the requirements of his past relevant work as a taxi driver. (R. 22). Nonetheless, at step five, upon considering Claimant's age, education, work experience, and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. (R. 23).

## V. DISCUSSION

### A. Substantial evidence supports the ALJ's determination that Claimant can perform a reduced range of sedentary work.

Claimant contends that while the medical opinions limited him to light work and the ALJ limited Claimant to sedentary work, substantial evidence does not support the ALJ's decision to "round down" from the medical opinions to sedentary work as opposed to finding Claimant disabled. Pl.'s Mem. [DE-20] at 14–17.

Even when an ALJ gives significant weight to a medical opinion, "an ALJ is not bound to accept or adopt all the limitations set forth therein." *Morgan v. Colvin*, No. 5:15-CV-266-D, 2016 WL 4217822, at *5 (E.D.N.C. July 21, 2016) (collecting cases), *adopted by* 2016 WL 4218333 (E.D.N.C. Aug. 9, 2016); *see also Eddie v. Berryhill*, No. 5:16-CV-801-D, 2017 WL 4002147, at *4 (E.D.N.C. Aug. 24, 2017) ("the ALJ was not required to adopt fully the limitations suggested by Dr. Wilson's opinion because he assigned it great weight"), *adopted by* 2017 WL 3995813 (E.D.N.C. Sept. 11, 2017); *Gallion v. Berryhill*, No. 5:16-CV-00312-FL, 2017 WL 3431915, at *5 (E.D.N.C. July 26, 2017); *Bundy v. Colvin*, No. 5:14-CV-55-FL, 2015 WL 450915, at *5 (E.D.N.C. Feb. 3, 2015). Here, the ALJ formulated a more restrictive RFC than contemplated by the medical opinions, but Claimant nonetheless contends that substantial evidence does not support the ALJ's decision to round down from light work to sedentary work, as opposed to departing from the

medical opinions to find Claimant disabled. Pl.'s Mem. [DE-20] at 16–17. Accordingly, notwithstanding the medical opinions limiting Claimant to light work, the issue is whether substantial evidence supports the ALJ's decision that Claimant can perform a reduced range of sedentary work.

An individual's RFC is the capacity he possesses despite the limitations caused by physical or mental impairments. 20 C.F.R. § 416.945(a)(1); *see also* S.S.R. 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The RFC is based on all relevant medical and other evidence in the record and may include a claimant's own description of limitations arising from alleged symptoms. 20 C.F.R. § 416.945(a)(3); *see also* S.S.R. 96-8p, 1996 WL 374184, at *5. Where a claimant has numerous impairments, including non-severe impairments, the ALJ must consider their cumulative effect in making a disability determination. 42 U.S.C. § 423(d)(2)(B); *see Hines v. Brown*, 872 F.2d 56, 59 (4th Cir. 1989) ("[I]n determining whether an individual's impairments are of sufficient severity to prohibit basic work related activities, an ALJ must consider the combined effect of a claimant's impairments.") (citations omitted).

"[T]he residual functional capacity 'assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions' listed in the regulations." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (quoting S.S.R. 96-8p). The ALJ must provide "a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* (quoting S.S.R. 96-8p). "Only after such a function-by-function analysis may an ALJ express RFC 'in terms of the exertional levels of work.'" *Monroe v. Colvin*, 826 F.3d 176, 179 (4th Cir. 2016) (quoting *Mascio*, 780 F.3d at 636); *see also Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) (observing

6

that the ALJ "must build an accurate and logical bridge from the evidence to his conclusion"). However, the Fourth Circuit has rejected "a per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis." *Mascio*, 780 F.3d at 636. Rather, the court explained that "[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Id.* (citation omitted). Therefore, despite an ALJ's failure to conduct the function-by-function analysis, the court must look to the ALJ's RFC discussion to determine whether it otherwise provides a sufficient basis for meaningful review.

The ALJ discussed Claimant's medical records from Vidant Health and Carolina East, in which Claimant "often complained of back pain, muscle aches, arthralgias and ankle swelling." (R. 20, 509, 513, 733). The ALJ summarized Claimant's April 2017 consultative examination, which showed "a waddling but symmetric gait, without the need for an assistive device[,] . . . 2+ bilateral lower extremity edema, full grip strength, decreased range of motion in the legs, hips, knees, and back, with negative straight leg raise, full strength, and normal sensation in all extremities." (R. 20, 381–85). In May 2017, an examination "demonstrated mild upper extremity weakness, mild lower extremity swelling and difficulty with ambulation." (R. 20, 517). In July 2017, Claimant had "tachycardia and tachypnea, but clear breath sounds and normal musculoskeletal range of motion." (R. 20, 647–49). In August 2017, Claimant had "normal gait and station, normal cardiovascular sounds and normal pulmonary sounds." (R. 20, 950). Claimant presented in a wheelchair when he sought treatment for asthma and shortness of breath in October 2017, "but physical examination revealed mostly normal physical findings, with normal strength." (R. 21, 567). In May 2018, Claimant had difficulty ambulating due to obesity but "normal

7

musculoskeletal strength on examination with normal gait and stance." (R. 21, 911). In September 2018, Claimant had "full musculoskeletal range of motion and strength, with normal gait." (R. 21, 902). He "demonstrated normal upper extremity strength, and was able to get up and down [from] the examination table without difficulty, even though he came into the office in a wheelchair." *Id.* In December 2018 and January 2019, Claimant had "painful lumbar flexion, antalgic gait and positive straight leg raise" as well as "hyperalgesia in the wrists and back, with normal sensation in the lower extremities" and used a cane. (R. 21, 834–35, 845–49).

The ALJ explained that "the record as a whole contains very little evidence of any assistive device use, much less a prescription or other medical indication for a cane." (R. 21). The ALJ noted that Claimant occasionally presented with a wheelchair, but given his "largely normal gait and ability to get on and off the exam table," the ALJ found that the record did not support ongoing use of a wheelchair. *Id.* The ALJ explained his formulation of the RFC as follows:

> Overall, the claimant's baseline physical findings are unremarkable, with essentially normal gait, strength, sensation, and range of motion throughout. Nevertheless, there are intermittent complaints of musculoskeletal pain and swelling, gait difficulty, mild weakness and shortness of breath. Given these symptoms in the context of his significant obesity, the undersigned finds that the claimant's musculoskeletal and cardiopulmonary impairments reasonably limit him to sedentary work with no climbing of ropes, scaffolds or ladders, occasional ramps or stairs, occasional postural activities, and no concentrated exposure to dangerous hazards. The claimant's asthma, lung disease, and diabetes further limit him to no concentrated exposure to extreme heat or pulmonary irritants. Finally, the claimant's carpal tunnel syndrome, which results in some upper extremity weakness, but largely normal strength and sensation, limits him to frequent handling and fingering. The record does not support the claimant's allegation of significant restriction in ability to sit, due to swelling, based on the limited objective findings noted above.

(R. 21). The ALJ gave moderate weight to the State agency medical consultants, who limited Claimant to a reduced range of light work, and the ALJ explained that a more restrictive RFC was warranted because he "further considered the combined effect of the claimant's impairments and

8

the exacerbating effects of significant obesity" as well as Claimant's "subjective complaints regarding difficulty with extended standing and walking." (R. 21–22).

Substantial evidence supports the ALJ's formulation of the RFC. The ALJ explained how the evidence supports each limitation and why a more restrictive RFC than the consultative opinions was warranted. The ALJ built a logical bridge from the evidence to his conclusion that Claimant is limited to a reduced range of sedentary work; accordingly, the ALJ did not err in formulating the RFC.

**B.      The ALJ did not err in discussing Claimant's subjective complaints.**

Claimant contends the ALJ erred in finding that his statements were not entirely consistent with the medical and other evidence. Pl.'s Mem. [DE-20] at 17–19. When assessing a claimant's RFC, it is within the province of the ALJ to determine whether a claimant's statements are consistent with the medical and other evidence. *See Shively v. Heckler*, 739 F.2d 987, 989–90 (4th Cir. 1984) ("Because he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight.") (citation omitted). Federal regulation 20 C.F.R. § 416.929(a) provides the authoritative standard for the evaluation of subjective complaints of pain and symptomology, whereby "the determination of whether a person is disabled by pain or other symptoms is a two-step process." *Craig*, 76 F.3d at 593–94. First, the ALJ must objectively determine whether the claimant has medically documented impairments that could cause his or her alleged symptoms. S.S.R. 16-3p, 2016 WL 1119029, at *3 (Mar. 16, 2016); *Hines v. Barnhart*, 453 F.3d 559, 564 (4th Cir. 2006). If the ALJ makes that determination, he must then evaluate "the intensity and persistence of the claimant's pain[,] and the extent to which it affects her ability to work," *Craig*, 76 F.3d at 595, and whether the claimant's statements are supported by the objective medical record. S.S.R. 16-3p,

9

2016 WL 1119029, at *4; *Hines*, 453 F.3d at 564–65.

Objective medical evidence may not capture the full extent of a claimant's symptoms, so where the objective medical evidence and subjective complaints are at odds, the ALJ should consider all factors concerning the "intensity, persistence and limiting effects" of the claimant's symptoms. S.S.R. 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. § 416.929(c)(3) (showing a complete list of factors). The ALJ may not discredit a claimant solely because his or her subjective complaints are not supported by objective medical evidence, *Craig*, 76 F.3d at 595–96, but neither is the ALJ required to accept the claimant's statements at face value; rather, the ALJ must "evaluate whether the statements are consistent with objective medical evidence and the other evidence." S.S.R. 16-3p, 2016 WL 1119029, at *6; *see Taylor v. Astrue*, No. 5:10-CV-263-FL, 2011 WL 1599679, at *4–8 (E.D.N.C. Mar. 23, 2011), *adopted by* 2011 WL 1599667 (E.D.N.C. Apr. 26, 2011).

> The ALJ summarized Claimant's testimony as follows:
>
> The claimant alleged disability due to back pain, shortness of breath, and leg swelling, stating that he was unable to stand or walk for more than a few minutes, and could only sit for 10–15 minutes at a time due to back pain and foot pain with swelling. The claimant stated that he could drive only short distances, used an electric cart to shop, and needed a cane to walk outside of his house. The claimant also alleged being unable to write, perform fine manipulation or hold objects for longer than ten seconds due to carpal tunnel syndrome.

(R. 19–20). The ALJ explained that those statements were inconsistent with the medical and other evidence because "the medical evidence does not support significant limitations in sitting, or [the] need of a cane for the limited standing and walking required of sedentary work. Nor does the record support the severity of the claimant's alleged manipulative limitations." (R. 20).

First, regarding Claimant's ability to sit, Claimant cites the hearing transcript showing that he needed to stand during the hearing. Pl.'s Mem. [DE-20] at 18. However, Claimant cites no

10

other evidence supporting a limitation in his ability to sit. Accordingly, substantial evidence supports the ALJ's conclusion that Claimant's alleged difficulty with sitting was not supported by the medical and other evidence.

Second, the ALJ explained why he found the record inconsistent with Claimant's alleged need of a cane. The ALJ found that "the record as a whole contains very little evidence of any assistive device use, much less a prescription or other medical indication for a cane." (R. 21). The ALJ summarized Claimant's April 2017 consultative examination, which showed "a waddling but symmetric gait, without the need for an assistive device." (R. 20, 381–85). In May 2017, Claimant had difficulty with ambulation, (R. 20, 517), but by August 2017, he had "normal gait and station," (R. 20, 950). Claimant presented in a wheelchair in October 2017, "but physical examination revealed mostly normal physical findings, with normal strength." (R. 21, 567). In May 2018, Claimant had difficulty ambulating due to obesity but "normal musculoskeletal strength on examination with normal gait and stance." (R. 21, 911). In September 2018, Claimant had "full musculoskeletal range of motion and strength, with normal gait." (R. 21, 902). He "demonstrated normal upper extremity strength, and was able to get up and down [from] the examination table without difficulty, even though he came into the office in a wheelchair." *Id.* In December 2018 and January 2019, Claimant used a cane. (R. 21, 834–35, 845–49). However, as the ALJ noted, the record contains no prescription for an assistive device. Substantial evidence supports the ALJ's conclusion that the record was inconsistent with Claimant's statement that he needs a cane to ambulate outside of his house.

Third, regarding Claimant's manipulative limitations, the ALJ found that "the claimant's carpal tunnel syndrome, which results in some upper extremity weakness, but largely normal strength and sensation, limits him to frequent handling and fingering." (R. 21). The April 2017

11

consultative examination showed full grip strength and normal sensation in all extremities. (R. 20, 381–85). In May 2017, an examination demonstrated mild upper extremity weakness. (R. 20, 517). Claimant had normal strength in October 2017, (R. 21, 567), May 2018, (R. 21, 911), and September 2018, (R. 21, 902). In December 2018 and January 2019, the ALJ noted that Claimant had "hyperalgesia in the wrists and back." (R. 21, 834–35, 845–49). Substantial evidence supports the ALJ's conclusion that the medical and other evidence is inconsistent with Claimant's statements that he cannot write, perform fine manipulation, or hold objects longer than ten seconds. Accordingly, the ALJ did not err in considering Claimant's testimony.

## VI. CONCLUSION

For the reasons stated above, Claimant's Motion for Judgment on the Pleadings [DE-19] is DENIED, Defendant's Motion for Judgment on the Pleadings [DE-21] is ALLOWED, and Defendant's final decision is affirmed.

So ordered, this the 6th day of August 2021.

Robert B. Jones, Jr.
United States Magistrate Judge